UNITED STATES DISTRICT COURT        SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas

**ENTERED**

May 20, 2022

Nathan Ochsner, Clerk

| | | |
|---|---|---|
| World's Garden, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | Civil Action H-17-1022 |
| | § | |
| Calavo Growers, Inc., | § | |
| | § | |
| Defendant. | § | |

## Opinion on Partial Summary Judgement

### 1.   *Introduction.*

World's Garden, LTD., and Calavo Grower's, Inc., had a contract. World's Garden would buy Calavo's products and Calavo would give it the best price compared with other distributors and customers. The relationship between the companies faltered when World's Garden suspected that Calavo was treating it unfairly in comparison with other distributors. This case ensued.

### 2.   *Facts.*

Calavo sells avocado based products to World's Garden. In 2005, Calavo signed a distribution agreement with World's Garden to sell select avocado products in Europe.

World's Garden would send a purchase order with the type of product it wanted to buy from Calavo, the quantity, and the price. If Calavo agreed, it would send a written confirmation of the order.

Calavo coordinated with World's Garden to ship its products to the specified location. Calavo would send World's Garden an invoice for the cost of shipping. Based on consumer demand, World's Garden asked Calavo to expedite shipment of an order. Sometimes, it requested that Calavo pay air freight to expedite delivery. World's Garden would reimburse Calavo for the cost of the shipment.

In 2014, World's Garden says that Calavo violated the distribution agreement. It says that Calavo did not honor the agreement's most favored customer pricing clause. It says that Calavo cut back on shipments and ignored lead time obligations.

Calavo says that World's Garden fell behind on payments for products. It says that World's Garden did not reimburse Calavo for the cost of shipping.

World's Garden sued Calavo for breach of contract and fraudulent inducement. It also seeks a declaration of rights under the agreement that: (a) Calavo must offer World's Garden the best pricing; (b) Calavo is prohibited from adjusting prices without notice; (c) Calavo must make its "best-effort" to promote World's Garden brand and market share; (d) Calavo must honor delivery lead-time of no more than 30 days from the date that World's Garden submits an order request; and (e) World's Garden is not obligated to pay for expedited shipping costs when Calavo violates lead-time obligations.

On March 29, 2018, Calavo moved for partial summary judgment on the pricing provision in the agreement and the declaratory relief claims.

3.    *Pricing Provision.*

The agreement said that Calvo would give World's Garden the best price for products that it sells to other distributors or customers.  Paragraph 8 of the agreement says:

> Payment: Producer [Calavo] and Distributor [WGL] shall agree, in writing, to the purchase price and terms of payment prior to each sale and shipment of Products. The purchase price shall be the Producer's current product prices charged to its best distributors, or customers, on the day of Producer's receipt of Distributor's order, plus shipping costs, taxes and duties incurred by Producer in shipment of the Product FOB Distributor's designated point of destination, in U.S. Dollars. The terms of payment shall not be less than thirty (30) days after the date of such Products' receipt by Distributor, or by if received by Distributor's designated recipient Distributor's receipt of proof of such delivery. At Producer's election, and upon thirty (30) days written notice to Distributor, past due sums may accrue interest at the rate of six percent (6%) per annum, commencing the date of delinquency.

Calavo says that this paragraph is unenforceable because it does not contain material terms of a contract. It says that this is an agreement to agree. It insists that World's Garden should not be able to revisit pricing of past orders because the purchase orders were a separate contract.

World's Garden says that this paragraph does contain material terms. It says the Court should look at the purchase orders and the agreement together. It says that the price is based on a most-favored customer price.

A.    *Agreement to Agree.*

The law has found an "agreement to agree" is an enforceable contract if it contains material terms.[1] "Material" means terms essential to the agreement.[2] If a price is not specified in the agreement, the contract is still enforceable if it can be ascertained by a clear formula or measurable standard.[3]

The pricing provision in this contract gave Calavo a measurable standard based on the best price it charged to other customers. Calavo says that this standard is still insufficient based on a case that relied on an oral agreement.[4]

Calavo and World's Garden had a written contract. The contract defined how prices would be determined. Calavo reinforced its intent to be bound by this pricing provision through emails that confirmed it was the best price. Because the contract contained the material terms and an intent to be bound, it is enforceable.

B.    *Products Comparison.*

The distinction between products makes it difficult to draw similar price comparisons sold under the most favored customer clause.

Calavo says that it cannot draw a products comparison to other distributors and customers because World's Garden orders personalized products. It says that it be impossible to account for adjustments made for

---

[1] *Fort Worth Independent School District v. City of Fort Worth,* 22 S.W. 3d 831, 846 (Tex. 2000).

[2] *McCalla v. Baker's Campground, Inc.,* 416 S.W.3d 416, 418 (Tex. 2013).

[3] *Fischer v. CTMI, LLC,* 479 S.W. 3d 231, 241 (Tex. 2016).

[4] *Playoff Corp. v. Blackwell,* 300 S.W. 3d 451, 456 (Tex. App. – Fort Worth 2009).

customers in the United States to determine whether it is giving World's Garden the best price. It insists that World's Garden wants a price comparison for different products with different ingredients.

World's Garden says that its products use standard packaging. The only difference, it says, is a printed label sticker, which Calavo is required to create under paragraph 11 of the contract. It also says that the product prices charged to other distributors should be adjusted to account for differences in products on the day that Calavo receives receipt of a purchase order.

The paragraph says that World's Garden should receive the best price from the day of the receipt of the purchase order. The contract does not say that the price should be adjusted. It allows the parties to negotiate price prior to each sale.

Calavo has a price sheet. It accounts for costs daily. It does not need extensive resources to decide if World's Garden received the best price. The adjustments proposed by World's Garden were not in the contract text. Calavo must charge World's Garden the best price based on a product-to-product comparison – not raw ingredients.

World's Garden said it obtained raw price information that showed other distributors were charged lower prices. Whether Calavo gave World's Garden the best price under the contract is not the subject of this motion.

C.    *Ratification.*

Ratification is a defense to a breach of contract. Ratification occurs when a party accepts the benefits of a contract and continues to perform under it with knowledge of the breach.[5] If so, the party waives the right to rescind the contract.

Calavo says that World's Garden ratified the orders by accepting the products. It says that it cannot retroactively challenge purchase orders it accepted. It says that World's Garden knowingly negotiated prices with Calavo and formed a separate contract.

---

[5] *Solvex Sales Corp. v. Triton Manufacturing Co.*, 888 S.W.2d 845 (Tex.App.-Tyler 1994).

World's Garden says that it did not have full knowledge of all the material facts to knowingly agree to the purchase price. It says that it trusted Calavo's representations that the price sheets were consistent with the contract. It says that Calavo had a disclosure obligation based on the most-favored customer clause.

The contract must be interpreted as a whole. The purchase orders and distribution agreement co-exist. The specifically agreed-upon price must comply with the most favored customer clause in the contract. World's Garden never waived the requirement when it signed subsequent purchase orders without checking alternate prices.

World's Garden could not have ratified the agreement because it did not affirm the breach. It believed that Calavo complied with the most favored customer clause. When World's Garden doubted that Calavo was charging the best price, it would ask for assurances. World's Garden has multiple examples of Calavo saying that the price was the best compared to other distributors and customers.

World's Garden did not ratify the contract because it did not have knowledge of an alleged breach.

5. *Best Efforts Clause.*

The contract required that World's Garden use its "best efforts" to promote Calavo's avocado products. It said:

> Distributor shall use his best efforts to represent and market Producer's Products in the Territory, and Producer shall use its best efforts to assist Distributor in his sales, marketing and distributing of the Products in the Territory.

Calavo says that this clause is unenforceable. It says that the clause does not have a measurable benchmark. It also says that proportional product volumes for World's Garden, exclusively, were not required under the contract.

World's Garden says that a best efforts clause does not need to have a specific goal. It says that the clause is enforceable under the Texas Uniform Commercial Code. It says that Calavo disproportionately cut supply while increasing volume to other distributors. It insists that whether Calavo met this obligation is a question of fact.

"Best effort" clauses requires guidelines.[6] Without it, success or failure would be inconsistent.

The contract does not identify a measurable goal. A finder of fact would be unable to decide whether Calavo met its goals because no goals were defined. The contract vaguely says that Calavo must use its best efforts to assist World's Garden in sales, marketing , and distribution.

Under the Code, a seller should use "best efforts" to supply product for exclusive dealings unless otherwise agreed upon. It says nothing more. Calavo was not required to give World's Garden a specific output or share. The contract does identify a proportionate output. It is unreasonable to conjure output requirements from thin air.

The clause is unenforceable.

6.   *Late Deliveries and Indemnity Clause.*

The contract contains an indemnity clause for shipment and product errors. World's Garden says that the contract requires a 30-day lead time obligation and indemnification by Calavo for late shipments. The contract says:

> Producer shall defend, indemnify and hold Distributor harmless at all times from and against, any and all claims, actions, demands, losses, costs, expenses, liabilities, penalties, and fees, including attorney's fees resulting to Distributor, arising from or associated with any defect in any Product, its labeling or errors in shipment, Producer or its agents, distributors, affiliates or associates sold to, or through, Distributor.

---

[6] *Kevin M. Ehringer Enterprises, Inc., v. McData Services Corp.*, 646 F.3d 321 (5th Cir. 2011).

A.    30-day Lead Time.

Calavo says that a 30-day lead time requirement is not written in the contract. It insists that World's Garden's declaration that it should never pay for shipping costs is wrong. It is nowhere to be seen in the text of the contract.

World's Garden says that the 30-day lead time requirement was adopted in a later agreement in 2011. It says that the requirement is the industry standard.

Paragraph 8 of the contract does not say that Calavo must meet a 30-day lead time. No evidence suggests that the parties intended that the 30-day lead time obligation become part of the underlying contract. Paragraph 19 of the contract says that amendments to the contract must be in writing and signed by both parties. World's Garden has no evidence of a signed amendment.

The purchase orders are separate agreements that must comply with the obligations under the main contract. The purchase orders do not automatically merge unless the parties intended it to become part of the agreement.

The evidence shows that Calavo and World's Garden negotiated different lead times based on each order. World's Garden has emails of different lead time obligations based on each purchase order. It is not consistently 30-days.

At least once, it was World's Garden that delayed shipping by requesting air freight. Even if Calavo publicly said that it "typically" fulfills orders within 30 days, it is not absolute. Without a signed agreement to amend the contract, the purchase order lead-times are not added to the main contract.

World's Garden pleads that Calavo violated the distribution agreement's lead-time obligation. No lead-time obligation exists in the distribution agreement. Even if it violated a purchase order shipment, World's Garden does not plead the breach of a purchase order. It pleads a breach of the agreement. It's claim that a 30-day lead time was required fails.

World's Garden also seeks a declaration that Calavo could never withhold deliveries unless force majeure requires it.

Calavo says that the contract does not specify remedies for a breach of the terms. It says that without a remedy, common law fills the terms.

World's Garden insists that the remedy is 6% interest for unpaid shipments. It says Calavo could not withhold deliveries under the contract when World's Garden did not pay.

Texas law allows a seller to withhold delivery if a buyer does not pay.[7] It is logical. Calavo would have no remedy for World's Garden's failure to pay other than unlimited accruing interest. Calavo is not a bank. It is a producer of agricultural products in limited supply.

The remedy in Paragraph 8 of 6% interest for unpaid shipments is not exclusive. Traditional contract remedies still apply. World's Garden's claim that Calavo may never suspend shipments and is limited to accruing interest fails.

B.    *Indemnification.*

Calavo says that indemnity only applies if a defect exists in the product or if an error in shipment occurred. It says that nothing in the contract requires that Calavo pay for late shipping costs.

World's Garden says that it should never pay for shipping costs if the product is late. It insists that indemnification is proper for "intentional or negligent errors" in shipment.

The contract says that World's Garden will pay shipping costs. The indemnification clause says that Calavo must pay for "errors in shipment." "Error" is a mistake or incorrect understanding. A finder of fact could conclude that an "error in shipment" is a late shipment.

Because the contract did not specify a lead-time obligation, whether Calavo erred in shipping and must indemnify World's Garden is a fact issue.

C.    *Packaging Materials.*

World's Garden seeks a declaration that the contract requires that Calavo must store sufficient packaging materials at the facility to satisfy forecasted orders.

Paragraph 11 of the contract says that Calavo has an obligation to label products in conformity with the laws of the destination country. It may imply

---

[7] Texas Business & Commercial Code § 2.703. Seller's Remedies in General

that Calavo should have the packaging readily available but it is not required. If Calavo had a specific lead-time, however Calavo chooses to meet this obligation is it's own prerogative.

The declaratory relief that World's Garden seeks is not in the contract. Calavo is not required to maintain packaging at the facility. This claim is denied.

7.    *Indefinite or Terminable-by-Will.*

The agreement says that the contract will continue year-to-year based on specific conditions for minimum purchase requirements. Paragraphs 4 through 6 outline termination obligations for each party. It says:

> Termination by Producer: If Distributor, on any anniversary date of this Agreement, shall have failed to meet Annual Purchase Requirement, for the preceding year, Producer shall notify Distributor in writing of such failure and Distributor shall have thirty (30) days, after his receipt of such notice, in which to cure such failure by the purchase of such amount of Product sufficient, when added to all Product purchased during the prior year, to equal the Annual Purchase Requirement for such year ("Shortage"). Should Distributor fail to cure such Shortage, Producer may, at its election, terminate this Agreement by providing Distributor written notice of such termination, which termination shall be effective thirty (30) days after its receipt by Distributor

> Termination by Distributor: Distributor may terminate this Agreement upon thirty (30) days' written notice of such termination to Producer. Such termination shall be effective thirty (30) days after its receipt by Purchaser.

> Termination by Agreement: This Agreement may be terminated upon the written Agreement of the parties hereto, or that their respective successors.

Calavo says that the distribution agreement is terminable at-will because it is indefinite. It says that Texas law holds that a contract which continues indefinitely can be terminated by either party.[8]

World's Garden says that the contract says that Calavo can only terminate the agreement if World's Garden does not meet the minimum purchase requirements. It says that the law in other courts requires that the parties adhere to the written contract for termination if it identifies specific termination events.[9]

The Court will apply Texas law. Limited termination clauses in a contract do not preclude a finding that a contract is not terminable-at-will.[10] The year-to-year term is indefinite. If World's Garden wants to continue the contract, it must meet the purchase requirements. It does not foreclose Calavo's ability to terminate the contract.

The contract does not say that the termination by producer is exclusive. Distributors in exclusive production contracts face the risk that supply will run dry. It does not mean that the producer has their hands tied forever. The contract is terminable-at-will.

8.    *Conclusion.*

World's Garden breach of contract claim subsists based on the Court's interpretation of the pricing provision. The "best" price is determined by a product-to-product comparison. The adjustment's contemplated by World's Garden are unenforceable.

Calavo argued that the declaratory relief World's Garden seeks should be dismissed. Some of the declarations require additional discovery to determine the parties' intent.

---

[8] *Clear Lake City Water Authority v. Clear Lake Utilities*, 549 S.W.2d 385, 390 (Tex. 1977).

[9] *Mor-Cor Packaging Products, Inc. V. Innovative Packaging Corp.*, 328 F.3d 331, 333 (7th Cir. 2003).

[10] *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 857 (5th Cir. 2004).

These declarations are denied:

    (a) Calavo must make its "best-effort" to promote World's Garden brand and market share;

    (b) Calavo must honor delivery lead-time of no more than 30 days from the date that World's Garden submits an order request;

    (c) Calavo may never cease shipments of product to World's Garden for any other reason than World's Garden's failure to order minimum benchmarks outlined in the contract;

    (d) Calavo must store sufficient packaging materials to satisfy forecasted orders from World's Garden.

Signed on May _18_, 2022, at Houston, Texas.

 

                                                  Lynn N. Hughes
                                      United States District Judge